## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| Christopher Hamilton, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br><br>Defendant. | Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Hamilton on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Defendant American Honda Motor Company, Inc. ("Honda" or "Defendant"). For his Complaint, Plaintiff alleges the following based on personal knowledge as to his own acts and on the investigation conducted by his counsel as to all other allegations:

## <u>INTRODUCTION</u>

1.      This consumer class action arises from a latent defect found in model year 2015 - through 2018 Honda Civic, CR-V, and Accord vehicles with 1.5-liter direct injection turbocharged engines (the "Class Vehicles").

1

2.    The engines in the Class Vehicles suffer from an inherent latent defect that results in the engine oil becoming diluted with gasoline, which is known as fuel dilution.  Due to the defect, gasoline gets into the crankcase, diluting the oil and reducing the oil's ability to protect and lubricate the engine, leading to premature engine wear, potential engine damage and ultimately potential engine failure.  In addition, fuel dilution can lead to gasoline fumes seeping in to the passenger compartment.

3.    Under normal circumstances, un-combusted gasoline accumulates in the lubricant oil pan and evaporates under heat from the engine that then ends up back in the engine combustion chamber as fuel.  In the Class Vehicles, however, owners are reporting that un-combusted gasoline is diluting the engine oil which manifests in a strong smell of gasoline inside the cabin, in the short term, and gasoline in the oil that may lead to engine damage in the long term.  Some drivers have reported that the car's check-engine light has switched on as result.

4.    Honda is well aware of the latent fuel dilution defect in its 1.5 liter direct injection turbocharged engines.  For instance, in March 2018 it recalled 350,000 Civic and CR-V vehicles with 1.5 liter direct injection turbocharged engines in China for problems with fuel dilution.  Despite this knowledge, Honda

has not disclosed and continues to conceal the latent fuel dilution defect in Class Vehicles.

5.      Despite notice and knowledge of the defect from the numerous complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and their own internal records, including pre-sale durability testing, Honda has not recalled and/or offered an adequate engine repair to the Class Vehicles, offered their customers suitable repairs or replacements free of charge, or offered to reimburse their customers who have incurred out-of-pocket expenses to repair the defect.

6.      Plaintiff has suffered harm as a result of Honda's decision not to disclose the fuel dilution defect.  Plaintiff purchased a 2017 Honda brand new which suffers from the fuel dilution defect.

7.      On behalf of the class and subclass he proposes to represent, Plaintiff seeks an award of damages, including the costs of inspecting and repairing its 1.5 liter turbocharged engines, and appropriate equitable relief, including an order requiring Honda to adequately disclose and repair the fuel dilution defect in its 1.5 liter turbocharged engines.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under the Class Action

Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class

members exceed the sum or value of $5,000,000, exclusive of interests and costs.

This is a class action in which more than two-thirds of the proposed plaintiff class

are citizens of states other than the Defendant.

9.      This Court has jurisdiction over this action because Defendant

operates its business in the State of Georgia, including within the boundaries of

this judicial district; consented to jurisdiction by registering to conduct business in

Georgia; maintains sufficient minimum contacts in Georgia; and otherwise

intentionally avails itself of the markets within Georgia through promotion, sale,

marketing and distribution of its vehicles, which renders the exercise of

jurisdiction by this Court proper and necessary.

10.      Venue is proper in this District, under 28 U.S.C. § 1391(b), because a

substantial part of the events or omissions giving rise to the claims of the Plaintiff

occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Background on Honda

11.    Defendant is a subsidiary of Honda Motor Co., Ltd., a leading global auto manufacturer with facilities across the world. Honda was recently ranked the 8th largest engine manufacturer in the world.

**B. <u>The Class Vehicles' 1.5-liter direct injection turbocharged engines and Honda's Representations About Them</u>**

12.    On November 19, 2013 - Honda Motor Co., Ltd. announced that it has newly developed VTEC TURBO, a direct injection gasoline turbo engine most suitable for small-to-medium-sized vehicles.  Honda touted the VTEC TURBO as a new addition to the Earth Dreams Technology, and as next-generation powertrain technologies which achieve both the fun of driving and excellent fuel economy at a high level.

13.    Honda touted that with the application of variable valve motion technology such as Honda's unique VTEC along with direct injection turbocharging with highly-fluidized combustion and a thorough reduction in engine friction, this engine achieves class-leading output and environmental performance, while downsizing engine displacement

14.    Honda touted the 1.5 L 4-cylinder direct injection gasoline turbo engine as "next-generation compact engines that combine a base engine with a newly designed framework, the VTEC variable valve train system with

thoroughly reduced friction, a turbocharger with a low moment of inertia and high responsiveness, and direct injection technology to achieve good balance between high output and torque, above those of conventional naturally-aspirated engines, along with excellent fuel economy."

15.    A picture of the 1.5 L 4-cylinder direct injection gasoline turbo engine is below which illustrates its compact size:



16.    Honda provides a maintenance schedule, which "specifies how often you should have your car serviced and what things need attention."  The maintenance schedule states that "[i]t is essential that you have your car serviced as scheduled to retain its high level of safety, dependability, and emissions control performance."

17.    Honda's maintenance schedule provides that under "Normal Conditions" the engine oil need only be replaced every 7,500 miles or 12 months, or every 3,750 or 6 months under "Severe Conditions".

18.    Nowhere within the owners' manual or maintenance schedule does Honda indicate that the Fuel Oil Dilution defect exists, or that oil changes must be done more frequently than as specified within the maintenance schedule to "retain its high level of safety, dependability, and emissions control performance."

## C. **The Fuel Dilution Defect in the Class Vehicles' 1.5-liter direct injection turbocharged engines**

19.    For proper functioning of the engine, engine oil must fulfill five basic requirements: minimizing wear, assisting in cooling, maintains good piston and cylinder sealing necessary for optimum the compression, reducing corrosion and friction and controlling the deposits.  The highest rate of wear arises by starting the engine, because oil could not reach immediately all the critical parts of the engine.  When the engine is warmed up, oil should not become too low viscous, i.e. the oil film should keep proper thickness to ensure adequate wear protection of the engine.[1]

---

[1] *Influence of engine oils dilution by fuels on their viscosity, flash point and fire point*, D. Ljubas, H. Krpan, I. Matanovic (NAFTA 61 (2) 73-79 (2010).

20.     When the engine is warmed up, oil should not become too low viscous, i.e. the oil film should keep proper thickness to ensure adequate wear protection of the engine.

21.     In a GDI engine, gasoline is injected directly into the combustion chamber, rather than into the intake port.  This arrangement provides significant benefits in power and efficiency over the traditional port fuel injection method.

22.     Adding a turbocharger to gasoline direct injection engines greatly increases power, cuts $CO_2$ emissions and improves fuel economy, however, with direct injection some of the fuel does not fully vaporize, which can lead to blow-by in which high pressure on the top side of the piston pushes combustion gasses, as well as droplets of oil and fuel, past the piston rings and into the crankcase.

23.     Fuel dilution indicates the amount of raw, unburned fuel that ends up in the crankcase of an engine.  The fuel contaminates the oil and lowers its viscosity and flash point, creating friction-related wear almost immediately by reducing film strength.

24.     Fuel dilution reduces the oil's viscosity and flash point temperatures and diminishes its load-carrying ability.  A high fuel dilution over a short period of time or a moderate fuel dilution over an extended period of time can severely damage oil wetted components (bearings, gears, pistons, and so on).  In addition, it

promotes other failure mechanisms, including increased wear of oil wetted parts, lubricant breakdown and component seizure increased oil oxidation, sludge, and deposits, and an increase in the potential for fire or explosion due to volatile light ends.

25.     Gasoline direct injection delivers accurate and rapid distribution of atomized gasoline.  While traditional fuel-injection systems spray fuel into a manifold, GDI systems locate the injectors in the combustion chamber, which enables much more control over the amount of fuel injected and timing of fuel injection, improving combustion efficiency.  Spraying the fuel directly into the chamber also provides in-cylinder cooling, which helps allow higher compression ratios, increasing efficiency.  GDI engines use a mixture of 40 parts (or more) air to one part fuel during light loading, while traditional gasoline engines use a mixture close to 14.7 parts air to one part fuel.  The 40:1 ratio means less fuel is burned during combustion, resulting in better fuel economy.

26.     The major side-effect of this technology is the increased risk of fuel dilution.  As fuel is sprayed into the combustion chamber, it can wash past the rings and down the cylinder walls, into the oil sump.  Fuel dilution can cause a number of problems:

• Reduced oil viscosity interferes with formation of a durable lubricating film, inviting wear.  Combustion-zone parts are especially prone to wear, including the pistons, rings and liners.

• Reduced viscosity also negatively affects the oil's ability to function as a hydraulic fluid, which is critical in engines with variable valve timing.

• Fuel can wash oil from the cylinder wall, causing higher rates of ring, piston and cylinder wear.

• Reduced effectiveness of detergency additives limits the oil's ability to guard against deposits.

• Increased oil volatility results in higher oil consumption, requiring more frequent top-offs.

• Accelerated oxidation reduces the oil's service life and requires more frequent oil changes.

27.    The Fuel Dilution Defect affects critical components in the Class Vehicle's engines, a brief overview of which is provided below.

28.    Like most gasoline-powered internal combustion engines, the 1.5L MPI engine powers a vehicle's wheels by igniting fuel inside combustion chambers.

29.     The combustion cycle begins when oxygen and fuel enter the combustion chamber through the opening of an intake valve ("I" in the diagram below).



30.     The pressure created by combustion moves the piston ("P") down. The piston is attached to the connecting rod ("R"), which converts the vertical movement of the piston into the rotational force that turns the crankshaft ("C") powering the wheels.  Each of the engine's pistons are connected to the crankshaft in a reciprocal arrangement, such that the downward movement of one piston leads to the upward movement of another piston.  The piston, connecting rod, and crankshaft are all lubricated by engine oil and, as such, are liability to

damage and failure due to fuel dilution.  During operation, these components are in constant rapid motion and a failure of any of these components can cause the engine to catastrophically fail.

### D. Honda's Knowledge of the Fuel Dilution Defect

31.     Upon information and belief, Defendant, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and TSBs, and (5) other various sources, was well aware of the Fuel Dilution Defect but failed to notify customers of the nature and extent of the problems with Class Vehicle engines or to provide any adequate remedy.

32.     The NHTSA complaints include the following:

| **Complaint Date:** Jun. 4, 2018 | **NHTSA ID Number:** 11099489 |
|---|---|
| **Summary:** | |
| Checked oil before Honda service over filled on dipstick strong gas odor in oil and cabin. | |

| **Complaint Date:** Jun. 2, 2018 | **NHTSA ID Number:** 11099311 |
|---|---|
| **Summary:** | |

I was following a CRV forum (hondacrvowners.com) and noticed a lot of people start mentioning fuel in the oil. Then saw news articles about a huge CRV recall in China's cold climate areas with the same symptoms. I then began checking the oil frequently and noticed a definite fuel smell on the dipstick and rising above the full mark. I have not noticed a fuel smell in the cabin, fortunately, as some have complaint about, but this is not good for an engine. Two Honda dealers have told me they are of the issue, but not to worry about it and to check the oil since no lights are on and scans show no problem. Of course! No problems yet, but most drivers don't check their oil and won't notice a problem until the engine completely fails and puts the occupants' lives in danger.

**Complaint Date:** May. 30, 2018          **NHTSA ID Number:** 11098845

**Summary:**

Fuel-oil smell in cabin and outside the car when it is parked in-door after drive. Fuel in oil. The oil level exceeds maximum. Gasoline smell in the oil. The car does not comply with the manufacturer's technical specification…According to Honda: "Overfilling the engine oil can result in leaks and engine damage."

**Complaint Date:** May. 30, 2018          **NHTSA ID Number:** 11098691

**Summary:**

During the first oil change we removed over 5 quarts of liquid. The owners manual states that the car holds only 3.7 quarts of oil. We contacted the dealership we bought it from and they informed us that this is a known issue for the 2017 Honda CR-V…I have contacted Honda numerous times and the one time I actually talked to my case manager she told me that it was normal operation and Honda is

not considering this an issue.

**Complaint Date:** May. 29, 2018          **NHTSA ID Number:** 11098362

**Summary:**

I heard that there is oil level increase problem on this make, model, and year's engine because of fuel leak, so I checked the engine oil level a few hundred miles after changing the oil and found that the oil level is much higher than the maximum mark on the dipstick.  I brought the car to dealer previously, complaining of a smell of gas in the oil when I checked it initially, and they said it is fine, that nothing is wrong.

**Complaint Date:** May. 28, 2018          **NHTSA ID Number:** 11098343

**Summary:**

There is certainly an excess amount of gas mixed in engine oil.  Only few weeks after oil change, the oil level is already 20 MM above the max line.  It's certainly a design flaw and I think Honda should be responsible for this mistake and the customers.

**Complaint Date:** May. 26, 2018          **NHTSA ID Number:** 11098079

**Summary:**

I have had the brakes engage twice through the collision avoidance system with no other vehicles around me.  Dangerous as I could be rear ended.  And the oil level rises with fuel dilution and gas fumes enter the passenger compartment.  Vehicle misfired and shutdown on highway dangerous situation and breathing gas fumes.

| **Complaint Date:** May. 22, 2018 | **NHTSA ID Number:** 11097244 |
|---|---|
| **Summary:** ||
| Oil/dilution on dip stick.  Gas smell on dip stick.  Overfilled dip stick. ||

| **Complaint Date:** May. 17, 2018 | **NHTSA ID Number:** 11096603 |
|---|---|
| **Summary:** ||
| I bought this 2017 CRV EXL-NAV AWD in 05/2017…I heard that there is oil excessive problem on this 1.5T engine, so I checked the engine oil level at about 8800 miles and found that the oil level is more than 10MM higher than the maximum mark on the dipstick. ||

| **Complaint Date:** May. 6, 2018 | **NHTSA ID Number:** 11092132 |
|---|---|
| **Summary:** ||
| Sometimes smell of gas in the passenger compartment. Oil level has increased and smells like gas. ||

| **Complaint Date:** May. 4, 2018 | **NHTSA ID Number:** 11090588 |
|---|---|
| **Summary:** ||
| 2017 Honda CRV. Consumer writes in regards to damage to the engine.  The consumer was advised that gasoline was mixing with engine oil. ||

| **Complaint Date:** Apr. 29, 2018 | **NHTSA ID Number:** 11090869 |
|---|---|
| **Summary:** ||
| I have fuel in my oil and there have been numerous other reports of the same. ||

| **Complaint Date:** Apr. 25, 2018 | **NHTSA ID Number:** 11090001 |
| --- | --- |
| **Summary:** | |
| The vehicle oil gas a strong gasoline smell and the crankcase appears to be over filled.  Gasoline has migrated to the engine crankcase.  Original oil in vehicle at 5845 miles.  The odor is under the hood and very strong at oil filler cap and on the oil in the crankcase. | |

| **Complaint Date:** Apr. 6, 2018 | **NHTSA ID Number:** 11090346 |
| --- | --- |
| **Summary:** | |
| 2016 New Honda Civic 2.0 engine oil leaking!!!  2017 New Honda Civic 1.5T engine oil increased 13 MM | |

| **Complaint Date:** Apr. 6, 2018 | **NHTSA ID Number:** 11083635 |
| --- | --- |
| **Summary:** | |
| I have a 2017 Honda Civic with the 1.5 liter turbo.  I started seeing lots of information on the civic forum about oil dilution so I decided to have my engine oil analyzed.  The report came back saying that the amount of fuel in my oil was greater than 5% which was deemed critical.  This condition will cause engine failure and possible unsafe conditions. | |

33.    Beyond NHTSA, owners of class vehicles have taken to various Honda enthusiast consumer complaint boards to air their concerns about the Fuel Dilution Defect, including the following forums and threads which contain

16

hundreds of posts from owners of Class Vehicle relating to the Fuel Dilution

Defect:

- http://www.crvownersclub.com/forums/137-2017-present-official-specs-features-etc-gen-5/152938-magically-growing-oil-volume.html

- The ever useful CarComplaints:

https://www.carcomplaints.com/Honda/CR-V/2017/engine/high_oil_level_with_gas_in_oil.shtml

2017 Honda CR-V Manual: http://owners.honda.com/vehicle-information/manuals?year=2017&model=CR-V

- http://www.crvownersclub.com/forums/137-2017-present-official-specs-features-etc-gen-5/175858-1-5-turbo-psa-potential-issue-watch-your-oil-level.html#/topics/175858?page=1 – Consolidated page

forum for information relating to the CR-V

- https://www.civicx.com/threads/fuel-dilution-with-gas-check-yours.20605/

- https://www.civicx.com/threads/oil-level-increase.11235/

- https://www.civicx.com/threads/oil-dilution-tsb.21118/

34.    One such owner of Honda vehicle with the 1.5 L turbocharged engine

had his oil analyzed by a leading lab, pictured below.  The Oil Report indicated

that the fuel dilution was "pretty high, and the fuel thinned the viscosity below spec":



35.    Further indicating Honda's knowledge of the Fuel Dilution Defect, one Honda Civic owner has reported that Honda has created the below form to be used to gather information about the Defect:

36.     Despite its knowledge of the Fuel Dilution defect, Honda has not admitted to its existence, or otherwise advised owners of Class Vehicles that they should have their oil changed more frequently to prevent engine damage.

### E.   Honda's Recall in China of Vehicles with 1.5-liter direct injection turbocharged engines

37.     In or around February 12, 2018, Honda Motor Company indicated that it intended to recall roughly 350,000 CR-Vs and Civics equipped with a 1.5-liter turbo engine in China due to a barrage of complaints regarding an unusual amount of un-combusted gasoline collecting in the engine's lubricant oil pan which in some cases caused a strong odor of gasoline inside the car and in other cases the car's check-engine light came on.

38.     On or about March 2, 2018 Honda Motor Company halted new sales of CR-V crossovers in China and may yet have to do the same with its Civic model after a Chinese watchdog rejected the automaker's plan to recall 350,000 of the cars to fix the fuel dilution problem.

### PLAINTIFF'S EXPERIENCE

39.     In or around June 2017, Plaintiff purchased new 2017 Honda Civic with a 1.5T engine from Curry Honda in Chamblee, Georgia.  Plaintiff's Civic

came with the Fuel Dilution defect.  Honda did not disclose this fact to Plaintiff, who greatly values vehicle safety, cost, durability, performance, and quality.

40.     Plaintiff uses his Civic for travel on roads near his residence in the Atlanta, Georgia metropolitan area.

41.     From the date of purchase to the present, Plaintiff has serviced his vehicle in a timely and proper manner, including performing timely oil changes on the vehicle.

42.     On or about June 12, 2018, when his Civic had 10,127 miles on it, he checked the engine oil and noticed that it smelled like gasoline.

43.     Plaintiff thereafter brought his Civic to Curry Honda to and complained of the smell of gasoline in his oil.  The service advisor noted that the engine oil was "filled over the crank case" as detailed in the below service record:



44.    Despite Plaintiff's complaint, the dealership did not admit to the

existence of the Fuel Dilution defect, and instead said that there was "no problem

found at this time."

45.    In addition, Plaintiff has experienced fuel odors in the passenger

compartment of his vehicle as a result of the Fuel Dilution Defect.

46.    Plaintiff brings this action on behalf of himself, and on behalf of the

following class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3) and/or

23(c)(4). Specifically, the multistate class consists of the following:

## Georgia Class

All persons who purchased or leased a class vehicle in Georgia. (the "Georgia Class").

47.     The Class excludes the following: Defendant, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case.  Also excluded are any current or former owners or lessees of Class Vehicles with personal injury claims related to the Fuel Dilution Defect.  Plaintiff reserves the right to modify, change, or expand the definitions of the Class and Subclass based upon discovery and further investigation.

48.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable.  At least hundreds of thousands of Class members have been subjected to Defendant's conduct.  The class is ascertainable by reference to records in the possession of Honda.

49.     *Predominance*: Common questions of law and fact exist as to all members of the Class and Subclass.  These questions predominate over questions affecting individual members of the Class and Subclass and include:

     a.  Whether the Class Vehicles were sold with a Fuel Dilution Defect;

     b.  Whether Defendant knew of the Fuel Dilution Defect at the time of sale;

c.  Whether Defendant failed to disclose the Fuel Dilution Defect;

d.  Whether Defendant actively concealed the Fuel Dilution Defect;

e.  Whether a reasonable consumer would consider the Fuel Dilution Defect or its manifestation to be material;

f.  Whether Defendant breached express and/or implied warranties;

g.  Whether Defendant must disclose the Fuel Dilution Defect; and

h.  Whether Defendant violated consumer protection statutes and the other claims asserted herein.

50.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Class Vehicles. All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein.  Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiff and all Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendant's

course of conduct as described herein.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class and/or Subclass members.

51.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

52.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims.  Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

53.    *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

54.    Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## COUNT I

### By Plaintiff on Behalf of Himself and the Class

### Under Georgia's Fair Business Practices Act

55.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

56.    Plaintiff asserts this cause of action on behalf of himself and the Georgia Class.

57.    In accordance with the statutory requirements of Georgia's Fair Business Practices Act, Plaintiff provided Defendant with a demand letter outlining an opportunity to make a written offer of settlement of this claim on behalf of Mr. Hamilton and all putative class members within 30 days. Defendant did not respond to said letter.

58.     Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff and members of the Georgia Class to purchase the above-mentioned Class Vehicles with the Fuel Dilution defect.

59.     Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the defects alleged.

60.     Defendant's acts are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the Class Vehicles.  Honda's aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the Class Vehicles' safety, cost, durability, performance, or quality.  The sale and distribution of the Class Vehicles in Georgia was a consumer-oriented act and thereby falls under the Georgia's Fair Business Practices Act.

61.     Defendant's practices, acts, policies and course of conduct violated the Georgia's Fair Business Practices Act in that:

       a.     At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff Georgia Class

Members the known Fuel Dilution defect and the known risks associated therewith.

b.      Thereafter, Defendant failed to disclose the defects to Plaintiff, and the Georgia Class Members, either through warnings or recall notices, and/or actively concealed from them the Fuel Dilution defect, despite the fact that the company knew of such defects: (1) at the time of manufacturing; (2) at the point where NHTSA began to record complaints about the defect; and, at the very latest, (3) when similar vehicles were recalled in China as detailed herein.

c.      Defendant forced Plaintiff and the Georgia Class Members to expend time and/or money to attempt to remedy the Fuel Dilution defect, despite the fact that Defendant had prior knowledge of the defect at the time of purchase or thereafter.

d.      Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known, but concealed, Fuel Dilution defect would not be revealed to the consumer until after coverage expired thereunder and that many of the engines may fail prematurely, but outside the warranty period.

e.    Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

62.    Plaintiff and the Georgia Class Members justifiably relied upon Honda's representations in its maintenance schedule that stated that "[i]t is essential that you have your car serviced as scheduled to retain its high level of safety, dependability, and emissions control performance."

63.    Specifically, Honda's maintenance schedule provides that under "Normal Conditions" the engine oil need only be replaced every 7,500 miles or 12 months, or every 3,750 or 6 months under "Severe Conditions".

64.    Nowhere within the owners' manual or maintenance schedule does Honda indicate that the Fuel Oil Dilution defect exists, or that oil changes must be done more frequently than as specified within the maintenance schedule to retain

the Class Vehicles' "high level of safety, dependability, and emissions control performance."

65.    Despite that Plaintiff and other owners of Honda vehicles have confronted Honda was the apparent falsity of the above representations, Honda has not disclosed the Fuel Dilution Defect, asserting special knowledge.

66.    The aforementioned conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the Fuel Dilution defect.

67.    By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

68.    Members of the public were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries.

69.    Had Plaintiff and the other Class Members known about the existence of the Fuel Dilution defect they would not have purchased or leased their Class Vehicles and/or paid as much for them.  As such Plaintiff and the other

Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

70.     As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff and the Georgia Class Members have been injured as alleged herein, and are entitled to recover actual, punitive and/or statutory damages to the extent permitted by law, in an amount to be proven at trial.

71.     Plaintiff and Georgia Class Members also seek appropriate equitable relief, including an order requiring Honda to adequately disclose and remediate the Fuel Dilution defect and an order enjoining Honda from selling vehicles with the Fuel Dilution defect in the future.

## COUNT II

**By Plaintiff on Behalf of Himself and the Class**

**For Breach of Implied Warranty**

72.     Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

73.     Plaintiff brings this claim on behalf of himself and on behalf of the Class.

74.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

75.    Defendant provided Plaintiff and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.

76.    To be merchantable," goods must: pass without objection in the trade under the contract description; and be fit for the ordinary purposes for which such goods are used.

77.    The purpose of warranty statutes is that the enterprise which causes losses should lift them from the individual victims and distribute them widely among those who benefit from the activities of the enterprise.  This would include strict liability on the part of the manufacturer upon an implied warranty as to defects lurking in any kind of product.

78.    The Class Vehicles are not fit for their ordinary purpose of transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their 1.5T engines suffer from the Fuel Dilution defect in which gasoline gets into the crankcase, diluting the oil and reducing the oil's ability to protect and lubricate the engine, leading to premature engine wear, potential engine

damage and ultimately potential engine failure.  In addition, fuel dilution can lead to gasoline fumes seeping in to the passenger compartment.  Thus, the Fuel Dilution defect affects the usefulness, drivability and safety of the Class Vehicles.

79.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles are merchantable and fit for the ordinary purposes for which they were sold.

80.    Defendant's breach of implied warranty has caused damages to Plaintiffs and members of the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Classes, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

B.    appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

33

D.   award Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

E.   award pre-judgment and post-judgment interest on such monetary relief;

F.   grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the fuel dilution defect;

G.   award reasonable attorney's fees and costs; and

H.   grant such further relief that this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 17, 2018.

By:   /s/Matthew S. Harman
      Matthew S. Harman
      Georgia Bar No. 327169
      Eric Fredrickson
      Georgia Bar No. 489783

HARMAN LAW FIRM LLC
3414 Peachtree Rd. NE
Suite 1250
Atlanta, Georgia  30326
Phone: (404)  554-0777
Fax:   (404) 424-9370
Email: mharman@harmanlaw.com
         efredrickson@harmanlaw.com

AND

Nicholas A. Migliaccio, Esq. *
Jason S. Rathod, Esq.*
Esfand Y. Nafisi, Esq. *
Migliaccio & Rathod LLP
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520

* *pro hac vice* admission to be sought